Good afternoon, your honors. May it please the court. My name is Zachary Brugman with Popen Associates in Phoenix, Arizona. This is my first oral argument before the court and respectfully, I'd like to reserve three minutes for rebuttal. This case concerns administrative closure, a longstanding practice that was abruptly ended by a matter of Castro Tom. The main point of Castro Tom, or the Attorney General's authority in terms of his referral of cases, is that we had longstanding precedent of administrative closure through many or multiple BIA decisions, matter of appetition, matter of WIU. These cases blessed administrative closure after decades of practice. And while the former Attorney General could have done rulemaking authority and ended the use of administrative closure, the simple fact is that him referring a case to himself, this Castro Tom, the decision that ultimately came out was a product of the Attorney General's longstanding views on immigration. And while our brief does focus on that issue, the main point that I want to focus on with my oral argument is just how Castro Tom was erroneously decided in light of... Let me stop you there, just ask why... I'm not sure that that issue is properly before us, and I hope you'll address it, because in your opening brief, you focused on the due process argument that you started with, that it was improper for the Attorney General to decide this case himself, and it was not until your reply brief that you mentioned the Fourth Circuit case and presented any substantive challenge to the merits of the rule in Castro Tom. So we don't ordinarily consider an argument that's not raised till the reply, so why should we consider that argument here? Well, the first point is that when we're talking about the Attorney General's bias, we believe it's basically a different side of the same coin of Castro Tom being decided erroneously, that the Attorney General, he interpreted the regulations in just an erroneous manner that was a product of bias. And that's especially when we had much prior precedent allowing for administrative closure, as well as decades of practice under both Republican and Democratic administrations allowing for administrative closure. The second point... But there are two different arguments. I mean, the decision-maker was biased or acted improperly in assuming the responsibility of making the decision rather than having someone else make it. It is totally different from... On the merits, the decision is arbitrary and capricious or contrary to the statute or invalid. And your opening brief didn't put the government on notice that they needed to brief that second set of issues, and they didn't. Their reply brief didn't do anything but cite the Fourth Circuit. And that's what I was going to get into, Your Honors, is that just looking at the timing of our brief in light of the Fourth Circuit and Seventh Circuit decisions, our opening brief was filed in April 2019. The Fourth Circuit's Zuniga-Romero decision was decided in August of 2019, and then the Seventh Circuit most recently in June. And so our opening brief, when you look at pages 14... Well, ordinarily, people raise... Somebody had to raise the issue to get the decision in the Fourth Circuit and the Seventh Circuit. There was something arcane about the notion that there was an argument to be made. Well, I believe we raised the issue specifically on page 14 and 15 of our opening brief, where we cite to Abitigian, where we discuss the long history of prosecutorial discretion, which is very similar to administrative closure. May I ask another procedural question? If castratum was not the law, would your client have any chance of getting administrative closure under the standards that were in effect before castratum? You don't say anything about why he would possibly get administrative closure. Well, our client was prejudiced because he was deprived of the BIA's review of the IJ's denial of administrative closure. Well, that's fine, but he has to have some kind of a showing. What was the argument for why he should have gotten administrative closure? Well, I think the main argument is that I personally had seen thousands of immigrants exactly like this respondent who had received administrative closure out of the Phoenix Immigration Court. Wasn't it ordinarily when DHS essentially exercised against prosecutorial discretion? No. After Abitigian, administrative closure for the purpose of judicial economy happened all the time in Phoenix. And while the different immigration judges had different views on administrative closure,  and I'll be perfectly frank with the court, this particular petitioner, who we refer to usually as the respondent in immigration court, this petitioner does have a DUI on his record, and unlike other cases that we have pending before the court, he does not have a path to relief outside of removal proceedings. And so, to be perfectly frank with the court, this petitioner could have had his case administratively closed when Abitigian was the controlling authority, but once the matter of WYU was decided by the board, his shot at administrative closure did diminish. But I would point also the court to AR-54. That's where the department basically gave its position on administrative closure, and we believe that the department, in opposing administrative closure at that time, made a political statement that basically the assistant chief counsel said that there was a public interest in a final decision. And that language comes not in relation to administrative closure. That language comes from INS versus ABUDU, which is specific to motions to reopen. When we're talking about administrative closure and a public interest in a final decision, that assistant chief counsel, his position was very central to the judge's determination in denying administrative closure. But we believe that that statement was essentially a statement in line with the administration and that simply that it was a matter of timing, where this particular case would have been administratively closed, but for just the time that the motion was requested. But your argument is that there's a due process violation involved in Castro-Tum. I'll say it more generally. But an element of the due process claim is that you were prejudiced, and the immigration judge said you didn't satisfy the Abitizian factors. I mean, he explicitly applied that test. And so in order to show prejudice, it seems like you would have to show that that was somehow an abuse of discretion, such that if we were to make Castro-Tum disappear, there might actually be a different outcome under Abitizian. And your brief doesn't present any argument on that. So how could we find, even if we agree with you on all the other elements of the due process claim, how could we find that there was prejudice? Well, my client was prejudiced by Castro-Tum, and by the way the board simply deferred to that case and said, Castro-Tum is the law of the land. We're not even going to address administrative closure and review it whatsoever. And so respectfully, Your Honor, I do believe that when you look at the precedent, especially this court's precedent, this court had recognized in Gonzalez-Carabello v. Sessions 882 F3D 885 that the governing regulations, the 1003.1d.1 little 2 I's and 1003.10b, that those regulations supported the authority delegated to the IJ and the BIA to administratively close cases. And so this court's own... But just to get back to the substantive argument, we understand that. Are you abandoning the argument, Your Honor? No, not at all, Your Honor. Not at all. Well, since we're going to hear the other argument in the next case, it would be more interesting to me to hear you argue what you argued, rather than what you didn't argue. So, I mean, I think you have a hard road to hoe in terms of demonstrating bias, but there is something peculiar about this whole system. I mean, the fact is that you have something that purports to be adjudicatory, but you have the attorney general who isn't really adjudicating as such, acting as the final arbiter. And then you have, in this instance, sort of an evasion of the obvious thing to have done if you wanted to change this, which was to make a regulation. And there's no doubt that he could have had a regulation and said that we're not going to do this anymore. Isn't that right? Absolutely, Your Honor. And that's where all of the rules concerning deference come in, in terms of Castro-Tom being just a great departure from many years of precedent and decades of practice. Well, the point isn't really bias, then. I mean, it's really what hat could he have on? Because if the attorney general had had on his policymaking hat and had issued a regulation saying that we're either not going to have administrative closure or only have involving circumstances, you couldn't have complained about bias at that point. I mean, that's why policymakers truly make policy based on their opinion as to what best policy is, right? Absolutely, Your Honor. Yeah, we believe the administration had every right to change the enforcement priorities, to put forth new regulations as they've done. But when we're talking about the attorney general referring a case to himself and using that... Well, they do that. I mean, that is the system, right? Well, it's a strange case to refer to himself because it already had been decided for that. But that's the way the system is set up. The real question is, is there something... I mean, you're arguing with the system, not with the particular application of the system. That's just what I'm trying to clarify. Well, we believe that in terms of the attorney general's referral authority, Attorney General Sessions, he had the power to at least attempt this. But the way that his background, I guess, really reflects on the way that he interpreted it. I guess when you're departing from so much precedent and you're now saying, well, nothing that was decided in the past mattered, here's my interpretation, and then you have this history of what our opening brief discusses, and I would also point this court to an answering brief. I mean, I think there's a more interesting argument to be made here about the structural problem than the way you're making it. But let's suppose you had... Suppose Senator Sessions, and actually there's a joke behind this I'm trying to remember, had been... You know that Senator Sessions had been nominated to district court in Alabama and wasn't confirmed and ended up running for Senate after that. And so suppose instead the order had been reversed and after his long Senate career, from which you quote ostensibly, and maybe even after he was AG, he was appointed to the Ninth Circuit. That means he can't decide anything having to do with anything he'd said before? He wasn't confirmed? I think it's a little different when you're talking about the attorney general being a neutral arbiter of a question and him referring to... Do you think something that federal judges aren't neutral arbiters of questions? Well, I think it's a little different when you're an attorney general and you're referring the case to yourself, a federal judge. One of the problems I have is he didn't refer your case to himself. It would be different if you were Castro Tum, saying he's a biased adjudicator in the case, but he wasn't the adjudicator in your case. So your argument is even a step removed. You're saying that because he was biased in this other case, we can collaterally attack the precedent he established and have it not applied to my case. I'm not aware of that being a thing that has happened. Well, part of the problem with Castro Tum, and this goes to the bias, is that they selected a case that was very hard. Essentially, the respondent never showed up. And so it just strikes at the heart of just unfairness that the attorney general ended this longstanding practice with one case, and the result of that prejudiced my client. The BIA refused to even consider that issue on appeal. And so it was basically impossible to challenge Castro Tum, and that's where the amicus briefs that the attorney general requested. I knew from day one that once the Trump administration came into office that administrative closure was going to go. I didn't know exactly how, but when that amicus brief was called for, I'm like, oh, this is when administrative closure is going to die. It was just an assumption that there's no way that that attorney general, with his longstanding history of bias and killing the bipartisan immigration reform that most people in this country 80% supported, that he was going to neutrally decide administrative closure. Because his goal, and our administration's goal currently, was to just remove as many people as possible, and that's what they were allowed to do with enforcement priorities and allowed to do with changing regulations but not changing the law. What you mean to say, I think, is not changing. It's interpreting the law, not changing it. So in any event, thank you very much for your time, and please fire up. Thank you, Your Honors. You're on mute. Apologies for that. May it please the Court, I am Sarah Byrum, appearing on behalf of the attorney general. There is no basis to invalidate matter of Castro-Toome on the single ground Petitioner raises in his brief, that the former attorney general is biased toward noncitizens, has racial aminus, and is not an impartial adjudicator. Adjudicators are not biased just because they don't rule in one's favor. Differences in law and policy are not biased. No evidence of bias? No, racial aminus is biased. I didn't hear you. My apologies. I said racial aminus is biased. Yes, but there's no evidence of that in the face of this decision of matter of Castro-Toome, nor has Petitioner in this case pointed to any specific passages, phrases, wording in the decision, evidencing as such, and of course that is his burden to show. I'm somewhat more interested, as I said before, in a slightly more structural approach to this, which is the attorney general is an odd person to identify as an adjudicatory process. Is there another scheme that you can think of that's like this one in the government, where the main policy-making person for the department gets directly involved in adjudication, which is what this is? He has a rep, which is the regulation rep, and it sure would have been a lot simpler in this case if he'd done it. But in this instance, if that's what he wanted to do, and I understand it's set up that way, but I've worried about this for many years. It's a very odd system. Is there any other system like this? Not that it immediately comes to my mind, although I would be happy to look further into that. If I gleam anything, I can certainly inform the court. I would note that certainly he could have done this with regulations. There are proposed regulations that are currently pending. With regulations, we're going to hear your argument in the next case. I don't know if you're arguing, but that's the whole problem with the regulations. There's no doubt he could have done it. What's peculiar here is that he is essentially posing as a judge, but he's not a judge. If you like a judge, he's a policy person. True, but the attorney general does have, of course, the ability to certify decisions, as is the way he had done it in this case. Previous attorney generals, and I'm sure will be the case for future attorney generals, have used this ability to issue decisions that perhaps move things in a different direction, maybe procedurally or policy-wise. Certainly, you have past decisions like Silva-Trovino, for example, or Matter of Compion that looked to ineffective assistance of counsel, or Matter of Jean, which touched on the agency's discretion with aliens who had committed crimes and they were in asylum proceedings and such. There are decisions that have been certified in the past that have more of this adjudicatory nature and really also go to things like policy or the way that the attorney general wants his delegates to exercise discretion and the things that he can do. This isn't certainly the first case, and I can't imagine it will be the last to address it in this manner, even though perhaps it could have been done in regulation. That's why I'm asking a structural question. The way the system is set up, they'll have a built-in, and it hasn't been litigated here and I don't think we can decide, but I'm wondering if there is any case which has looked at this and said, can you have a person sitting around with two hats at the same time? One hat being, in some sense, the administration of the immigration system. Well, that's not as bad as it used to be because DHS used to be all in the Justice Department and DHS is doing a lot of it now, and the other hat being a supposed judge-like adjudicator. In terms of a due process system. I certainly can see that point. I am not aware of any cases that have looked at this idea about wearing the two hats, but again, I can certainly do more research and look at that. There are a number of agencies of the government that have both rulemaking and adjudicatory powers combined. Some of them are multi-member commissions. Some of them are CFPB as a single person. There are other agencies where you have that fusion of powers. It's something less commission-like. It's not like this one person sitting up there doing both things. As I say, it was a lot worse when the whole administrative mechanism was also in the Justice Department. The whole INS. I think part of the reason for separating it out was to have a more independent court because there have been a lot of calling for one court. Really, the kind of thing this department is complaining about here is connected to the structural one. Anyway, it's interesting to me because I don't think the issue was before us as such. So, is there anything else you want to add? I just wanted to briefly add that, as I have said before, that he does challenge Castro-Trump on the basis of racial aminus and partiality. There's no evidence for that. He doesn't point to any. Just also to let the court know as well that my opposing counsel had raised challenges to the agency's adjudication of his client's cancellation of removal and administrative closure. Just to make clear that in his opening brief, he did not challenge the agency's adjudication of his cancellation of removal claim. He also has not raised any challenge to the agency's denial of his administrative closure claim under a matter of avestian. So, those issues are also not before the court also. I had a question in that regard, counsel, and that is with regard to petitioner's argument that there was prejudice, if I understood it correctly, there was prejudice because the board never had the opportunity or undertook the avestian analysis. So, what are your thoughts on that? Well, certainly had the board perhaps done an alternative analysis and looked at it under a matter of avestian and, in addition, also ruled the way they did, which was to find it moot, that perhaps would have been more fulfilling. The way that they handled it by relying on Castro-Tum for mootness is correct. There is nothing incorrect about that. Certainly, the board could have also looked at matter of avestian. They didn't need to, though. And so, there is nothing wrong with what the board did in that respect. Mr. Bergman had raised the issue that is going to be discussed in the next case, substantive validity of Castro-Tum, and the records were otherwise the same as it is here. I presume that if the board did nothing but rely on Castro-Tum and we thought Castro-Tum was improper, that we wouldn't just remand it, wouldn't we? Because we have to review what they decided. It's not a process claim where we do have to look at prejudice. So, why don't we have to just remand it? Well, our view, of course, is that matter of Castro-Tum is... I understand that. So, if you found it invalid on the substance or on the merits, then you could send this case back on remand for the board to then adjudicate the administrative closure under matter of avestian. And we'd have to, because they didn't do the alternative ruling. Even though none of us can figure out how he convened it, they still didn't do it. Yes, that's correct. So, on remand, then the board could look at that and review the IJ's determination that he didn't warrant administrative closure. Just to be clear, that's your answer, if there were a substantive challenge to the validity of Castro-Tum that had been preserved in this case? Yes. Right. Yeah. What about the fact that there isn't one, actually? It's always a difficult problem. But we have three cases sitting here, right? And we have the next case where there is a frontal substantive attack, and were we to find it invalid there, we would nonetheless let Castro-Tum get a fine to Mr. Barclay's client? Or would we just remand that? Well, you wouldn't have to necessarily remand, because of course he doesn't raise the issue, and so he has waived any challenge to the substance of the merits. I think, however, practically what the court is likely to do would then remand this case, because the board did rely on Castro-Tum to find his claim of administrative closure before the board moved. And then the board would be required to look at his claim, his appeal before the board of that administrative closure under the matter of Avestian standards. There's no indication that he would be granted administrative closure under those standards either, and he hasn't made any argument in his brief that he would. He is removable. He has no relief. So any request for administrative closure for him would simply be open-ended and a request essentially to avoid removal. If there are no further questions, I'll sum up. In sum, petitioners challenged the matter of Castro-Tum based solely on bias and partiality must fail. He's also waived any challenge to the legal bases of Castro-Tum and the agency's conclusion that he is statutorily ineligible for cancellation of removal. He also makes no argument regarding his eligibility for administrative closure, even under a matter of Avestian. Therefore, this court should deny the petition for review. Thank you. Let me just ask one more question. I suppose Attorney General Sessions had much more definitive statements more often than he did, and he had said things like, in other words, there's no room for a biased analysis here. I am absolutely opposed to having any illegal people cross the border illegally. I will do everything in my power to see that they don't do so, and that is what I am going to do as Attorney General with every issue that comes before me, no matter what. And then he puts on his adjudicator hat and claims to be interpreting and regulating. In that scenario, I think that what the court would first look to, obviously, is the face of the decision, the four corners of the decision, and whether or not that decision itself was facially neutral. And then, certainly, they would look at those statements, but they would go back, first and foremost, to the decision itself to look at the four corners of that decision. Is it facially neutral? Was it the result of an extensive process of review? Was it premise on legitimate purposes? Things of that nature. And I think this is similar to, or that hypothetical, you can look to what happened with the Supreme Court's decision in Trump v. Hawaii, with the proclamation, and how they looked at and they considered the statements that had been made, the public statements that had been made, but still, at bottom, said we look to the decision itself, and we look to what is in that decision. Is it facially neutral? What is the process that was undertaken to arrive at the conclusion? And things like that. Do you think that the kind of bias challenge contemplated in Judge Berzon's hypothetical, would that challenge have to be brought by someone who was actually a party to the allegedly biased adjudication, or could it be brought by someone else in a later case when that decision is applied as precedent? Well, our view would be that they would have to be brought by that person itself. That's one of the weaknesses of this case here, is that even here, Mr. Castro, Tom himself, has never brought a biased claim. And so when the standard is personal bias, there's certainly no indication of that personally towards the petitioner in this case. So, it would need to be brought by that individual petitioner himself. Not someone who's seeking to essentially piggyback off that. Thank you for your time. Thank you. I thank you all for all your questions. I appreciate it. You're welcome. I'm worried about this thing. Yes, Mr. Bergman. I would just note that Castro, Tom couldn't challenge it, and that's part of the procedural problem of this case, and why we're asking this court to overturn Castro, Tom, is the Attorney General selected the Castro, Tom, because that immigrant had essentially disappeared, and he wasn't going to defend himself. And this case of such national import, that ultimately just shows how the process in this referral just is absolutely a product of bias. And when you look at page 17 of our opening brief, we have a footnote three. It's towards the end of the page. The Attorney General made a statement basically stating that administrative closure, he did not agree with it. That it either should be a removal or a grant of relief, that's it. And so we had prejudgment before Castro, Tom was even referred to the Attorney General. Okay, thank you very much for your arguments. The case of Jimenez-Garcia v. Barr is submitted, and we'll go to the last case of the day and of the week, Barr's Ariel v. Barr.
judges: Berzon, Gleason, Miller